<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ASLAN T. SOOBZOKOV (TSCHERIM SOOBZOKOV),                   Plaintiff, v. ERIC LICHTBLAU; HOUGHTON, MIFFLIN AND HARCOURT,                   Defendants. | Case: 2:15-cv-6831-SDW-LDW **OPINION** |

**WIGENTON**, District Judge.

Before this Court is Defendants Eric Lichtblau ("Lichtblau") and Houghton Mifflin Harcourt Publishing Company's ("HMH") (incorrectly identified as "Houghton, Mifflin and Harcourt") (collectively, "Defendants") Motion to Dismiss Plaintiff Aslan T. Soobzokov's ("Plaintiff") Complaint for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]  Jurisdiction is proper pursuant to 28 U.S.C. § 1332.[2]  Venue is proper pursuant to 28 U.S.C. § 1391.  This opinion is issued without oral argument pursuant to Federal Rule of Civil Procedure 78.

For the reasons stated herein, the Motion to Dismiss is **GRANTED**.

---

[1] Plaintiff includes his deceased father Tscherim Soobzokov in the case caption in parenthesis but does not directly name him as a plaintiff.  Therefore, this Court treats this case as one brought solely by Plaintiff Aslan T. Soobzokov.
[2] Although the parties are diverse, Plaintiff fails to quantify the amount in controversy.  Because Plaintiff seeks "compensatory, punitive, and [treble] damages, together with counsel fees, costs of suit and other relief as this honorable court deems proper" and because this Court will grant Defendants' motion to dismiss on the merits, for the purposes of this motion only, this Court assumes that the amount in controversy will exceed $75,000.00 as required by statute.

1

## I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is an attorney and a resident of New Jersey. (Compl. Jurisdiction ¶ 1.) Lichtblau is a journalist employed in the Washington, D.C. bureau of the New York Times and the author of *The Nazis Next Door* ("the Book"). (*Id.* at ¶¶ 2, 6.) The Book, which explores the extent to which the United States government allowed former Nazis to immigrate to the United States after World War II, was published by HMH, a publishing company with a principal place of business at 222 Berkeley Street in Boston, MA. (*Id.* at ¶ 3, 6; Defs.' Mot. Dismiss 1.)

Between 2011 and 2014, while he was researching the Book, Lichtblau contacted Plaintiff to obtain information about his late father, Tscherim Soobzokov ("Soobzokov"). (Compl. Count One ¶ 3.) Soobzokov, who was murdered at his home in New Jersey in 1985, had been accused of being a Nazi war criminal prior to his death, although he was never indicted or deported. (*Id.* ¶ 1.) Plaintiff agreed to speak with Lichtblau, and ultimately the two men met in person "for nearly seven full days," spoke on the phone, and exchanged emails and texts. (*Id.* at 4.) Plaintiff also gave Lichtblau documents regarding his father's involvement in WWII, and allowed him to copy those documents. (*Id.*) HMH published Lichtblau's Book on October 28, 2014. (*See* Compl. Jurisdiction ¶ 6; Defs.' Mot. Dismiss 4.) The Book contained information discussed or transmitted during the meetings between Plaintiff and Lichtblau. (Compl. Count One ¶¶ 4-7.) Lichtblau thanked Plaintiff in the Book's Acknowledgements for his "cooperation," and mentioned him in three other sections. (Declaration of Robert D. Balin ("Balin Decl.") Ex. B at 234, 139-140, 178, 229-230.)

On September 14, 2015, Plaintiff filed suit in this Court, alleging Lichtblau's work defamed him. Plaintiff's five-count Complaint contains claims of defamation (Counts One and Two), privacy invasion (Counts Three and Four), and intentional infliction of emotional distress (Count Five). On December 17, 2015 Defendants moved to dismiss the Complaint. Plaintiff timely filed his opposition brief on December 31, 2015, and the Defendants filed their reply on January 12, 2016.

## II. LEGAL STANDARD

Fed. R. Civ. P. 8(a)(2) governs the adequacy of pleadings, requiring that a complaint allege "a short and plain statement of the claim showing that the pleader is entitled to relief." *See also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief"). In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Phillips*, 515 F.3d at 231 (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) ("Twombly"). If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2). *Iqbal*, 129 S. Ct. at 1950 (internal quotation marks omitted). According to the Supreme Court in *Twombly*, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to

dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his[or her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555 (internal citations omitted). Furthermore, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* The Third Circuit summarized the *Twombly* pleading standard as follows: "'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556).

## III. Discussion

### *Defamation*

Defamation claims are governed by state law. *Maressa v. N.J. Monthly*, 445 A.2d 376, 384 (N.J. 1982) ("the existence of a judicial remedy for injury to reputations is entirely a matter of state law"). The Supreme Court of New Jersey has identified "the elements of the cause of action for defamation [as]: (1) the assertion of a false and defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault amounting at least to negligence by the publisher." *Leang v. Jersey City Bd. of Educ.*, 969 A.2d 1097, 1113 (N.J. 2009) (internal citations omitted).[3] A defamatory statement is "one that is false and injurious to the reputation of another or exposes another person to hatred, contempt or ridicule or subjects another

---

[3] Where statements involve matters of public concern, plaintiffs must prove a higher level of fault. Instead of negligence, they must show "actual malice." *Durando v. Nutley Sun*, 37 A.3d 449, 457 (N.J. 2012). "Actual malice" is a statement made with "knowledge that it was false or with reckless disregard of whether it was false or not." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964). To determine what constitutes a matter of public concern "that will trigger the actual-malice standard, a court should consider the content, form, and context of the speech." *Senna v. Florimont*, 958 A.2d 427, 444 (N.J. 2008).

Because this Court finds that the statements at issue in this case are not defamatory, it need not determine whether the statements are matters of public concern requiring a higher level of fault. However, this Court does note that the question of whether a person was involved in the Nazi regime during WWII is likely of public interest sufficient to trigger the actual malice standard. *See, e.g.*, *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 35 (1990) ("… Was Kurt Waldheim a Nazi officer? Such questions [as this] are matters of public concern long before all the facts are unearthed, if they ever are.") (Brennan, J., dissenting); *see also Romaine,* 537 A.2d at 294 (noting that "a lapse of time does not dilute newsworthiness or lessen the legitimacy of the public's concern").

4

person to a loss of the good will and confidence in which he or she is held by others." *Romaine v. Kallinger*, 537 A.2d 284, 287 (N.J. 1988) (internal citations omitted). Because a defamatory statement must be false, truth "is an absolute defense to a claim of defamation." *G.D. v. Kenny*, 984 A.2d 921, 928 (N.J. Super. Ct. App. Div. 2009); *Ward v. Zelikovsky*, 643 A.2d 972, 979 (N.J. 1994) (stating that "[t]rue statements are absolutely protected under the First Amendment."). Under New Jersey law, a plaintiff cannot be defamed by statements made about other people; only statements that are "of and concerning plaintiff" are actionable. *DeGroat v. Cooper*, No. 13-07779, 2014 WL 1922831, at *3 (D.N.J. May 14, 2014) (quoting *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 563 A.2d 31 (1989)) (internal citations omitted). Defamation claims are also limited to living persons; a plaintiff may not bring a claim on behalf of the deceased. *See Fasching v. Kallinger*, 510 A.2d 694, 700 (N.J. Super. Ct. App. Div. 1986) (holding that "[o]ne who publishes defamatory material concerning a deceased person is not liable either to the estate of the person or to his descendants or relatives.").[4]

Plaintiff is mentioned in the Book four times.[5] (Balin Decl. Ex. B at 139-140, 178, 229-230, 234.) On pages 139-140, Lichtblau describes Plaintiff's long-standing belief in his father's innocence and efforts to defend his father's name. (Balin Decl. Ex. B at 139-140.) Nothing in that passage is injurious to Plaintiff's reputation or would subject him to ridicule, contempt or hatred. Lichtblau is merely attempting to describe an understandable pattern of behavior seen in first-generation children of accused Nazis who "believe[] in their fathers and their innocence . . .." (*Id.* at 138.) Lichtblau next mentions Plaintiff when he notes that Plaintiff "rushed back from the

---

[4] To the extent Plaintiff's claims are brought on behalf of his father, who is identified in the case caption and who died in 1985, those claims are impermissible under New Jersey law and will be dismissed. To the extent Plaintiff claims he has been defamed by statements in the Book that may suggest his father was a Nazi or a war criminal, those claims are also impermissible under New Jersey law and will be dismissed.

[5] Plaintiff claims he is "repeatedly referred to in the book on five occasions." (Compl. Court Three ¶ 20.) This Court has identified only four mentions of Plaintiff in the Book.

5

Middle East to be with his father" as he was dying. (*Id.* at 178.) This indicates admirable filial devotion and is not defamatory. Lichtblau next notes that Plaintiff "pressed authorities to reopen the investigation" into his father's murder and brought an unsuccessful lawsuit alleging that "prosecutors failed to bring charges against anyone because of his father's notoriety as a Nazi." (*Id.* at 229-230.) Again, rather than defaming Plaintiff, this section evidences a son's devotion to his father and desire to obtain answers about his murder. Finally, Lichtblau thanks Plaintiff in the Book's Acknowledgments for his "cooperation." (*Id.* at 234.) Plaintiff argues that this "implies that [Plaintiff] helped Lichtblau in preparation of the book that falsely accused Tscherim Soobzokov of being a Nazi war criminal." (Compl. Count Three ¶ 21.) Although Plaintiff may dislike or disagree with conclusions Lichtblau drew when writing the Book, Plaintiff did cooperate with Lichtblau, meeting with him for several days, communicating by telephone, email and text, and providing him with documents. Lichtblau's thanks provided a truthful description of Plaintiff's involvement with the development of the Book and truthful statements can never be defamatory. Consequently, Plaintiff has failed to state a claim for defamation and Defendants' motion to dismiss Counts One and Two of the Complaint will be granted.

### *Privacy Invasion/False Light*

New Jersey recognizes a right of action for privacy invasion where "publicity [] unreasonably places the other in a false light before the public." *Romaine*, 537 A.2d 284, 289-90 (1988) (quoting *Machleder v. Diaz*, 801 F.2d 46, 53 (2d Cir. 1986), *cert denied*, *Machleder v. CBS, Inc.*, 479 U.S. 1088 (1987)). The false light must be "highly offensive to a reasonable person" and requires that "the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Romaine*, 537 A.2d at 290 (quoting *Restatement (Second) of Torts* § 652E). A false light claim is not actionable when it

is "based upon the very publication that the court has previously held non-defamatory and absolutely privileged as a First Amendment expression." *Walko v. Kean College of N.J.*, 561 A.2d 680, 687 (N.J. Super. Ct. Law Div. 1988). As discussed above, Plaintiff has failed to state a claim for defamation, therefore, Plaintiff's claim for privacy invasion/false light cannot stand and Defendants' motion to dismiss Counts Three and Four will also be granted.

### *Intentional Infliction of Emotional Distress ("IIED")*

To state a viable claim for IIED, New Jersey law requires that a plaintiff show that a defendant "acted intentionally or recklessly by engaging in extreme and outrageous conduct that was the proximate cause of the plaintiff's emotional distress." *Foster v. Six Flags Great Adventure LLC*, No. 15-2535, 2016 WL 54912, at *4 (D.N.J. Jan. 5, 2016) (citing *Buckley v. Trenton Sav. Fund Soc'y*, 544 A.2d 857, 863 (N.J. 1988)). Where "emotional-distress and defamation claims are so closely linked together, it comports with first amendment protections to deny an emotional-distress claim based on a publication that does not constitute defamation." *G.D. v. Kenny*, 15 A.3d 300, 318 (N.J. 2011) (quoting *Decker v. Princeton Packet, Inc.*, 561 A.2d 1122 (N.J. 1989)). Although it is clear that Plaintiff is troubled by Lichtblau's book, he has failed to show that he has been defamed, and, therefore, Defendants' motion to dismiss Plaintiff's IIED claim must also be granted.

## IV. CONCLUSION

For the reasons set forth above, the Motion to Dismiss is **GRANTED**. An appropriate order follows.

                                                                             /s/ Susan D. Wigenton

                                                     SUSAN D. WIGENTON, U.S.D.J

Orig:         Clerk  
cc:           Leda D. Wettre, U.S.M.J.  
                   Parties